IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : |
|  | : Criminal No.: 05 - 731 (CCK) |
| KESETBRHAN M. KELETA | : |
| Defendant | : |

RESPONSE TO THE GOVENRMENT'S
MEMORANDUM IN AID OF RESENTENCING

Defendant, Keleta, through undersigned counsel, respectfully submits this response to the government's memorandum to aid of sentencing.

BACKGROUND

Mr. Keleta contracted the Eritrean Embassy to setup a method of transferring money from the United States and Eritrea. Eritrea is a country struggling with famine, starvation and drought and the added weight of thousands of refugees from bordering countries that are either in the midst of war or ravaged by past wars. Eritrea and its people are and have been for sometime a desperate people.

Kesetbrhan Keleta is a product of that country and has experienced the suffering of its people as many of them are his relatives and friends. He has seen the starvation and the death of the Eritrean people including women and children first hand. Like many Eritreans Mr. Keleta left Eritrea in search of a better life. Mr. Keleta became a citizen of Canada where he began contracting with organizations to set up computer systems. Mr. Keleta pursued many contacts and attempted to work for several organizations.

The Eritrean embassy well aware of the needs of its people established a system of transferring money between the United States and Ertitrea. Many Eritreans who had come to the United States in search of a better life had not forgotten their families and friends who continued to suffer in Eritrea. Those who were earning money here in the United States needed to send money to Eritrea to ease the hunger and starvation of their families. These families would travel to what they referred to as the "Eritrean embassy" to send money home to their friends and families. The Eritreans were actually going to the Eritrean Cultural Center that was run by the Eritrean Embassy. The embassy charged a fee for each transaction, approximately $10 to $15. This service charge was retained by the Eritrean Embassy, however, the government has not revealed to whom the transaction fees went.

The monetary transacting business established by the Eritrean government was not as efficient as needed and the Eritrean government contracted with Mr. Keleta to design a more efficient means of transferring money to Eritrea and the people who needed help.

At the behest of the Eritrean government Mr. Keleta modified the system making the transfer of money to Eritrea faster and easier. This work was done pursuant to a contract signed by the Eritrean government officials.

Over the course of approximately 2 years Mr. Keleta while woking for the Embassy of Eritrea caused approximately 8 million dollars to be sent to the suffering people of Eritrea.

After improving the Eritrean government's money transfer business Mr. Keleta traveled to Eritrea upon his return he was detained by Customs officials and questioned. Ultimately Mr. Keleta was charged was money laundering. At trial the government called a number of witnesses to establish that Mr. Keleta was the person who operated the money transfer business. Among these witnesses and the most important to the government was Mr.

Tekle an embassy attaché who admittedly set up the money transfer business. In return for a grant of immunity Mr. Tekle claimed that Mr. Keleta ran the business he created.

Based in large part on the testimony of Mr. Tekle, Mr. Keleta was convicted of operating a money transferring business.

## ARGUMENT

Mr. Keleta was convicted of violating 18 U.S.C. § 1960 which carries a penalty of not more than five (5) years imprisonment or a fine. As it determines the appropriate sentence to impose upon Mr. Keleta this Court must be guided by the factors articulated in 18 U.S.C. 3553 as it determines an appropriate sentence for Mr. Keleta. The considerations are: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed – considering that the sentence should reflect the seriousness of the offense such that it promotes respect for the law and provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentences and the sentencing range established by the sentencing guidelines. 18 U.S.C. 3553.

Although the Court must consider the Federal Sentencing Guidelines, the Court is no longer bound by the guidelines, thus the Court can and should consider factors that the guidelines do not consider. The guidelines do not consider such factors as a stable family life, the fact that the money transferred went to people who needed it desperately. The guidelines do not consider that a struggling businessman will lose everything that he has worked his entire life to earn.

The Court that we address the amount of loss for which Mr. Keleta is responsible. According to the government Mr. Keleta is responsible for over 8 million dollars based on the <u>value of the funds involved</u> in the illegal transactions. The plain language of § 2B1.1 states that it is the loss that should be considered, however it is also true that § 2S1.3 indicates that it is the value of the funds. Mr. Keleta's position is that § 2S1.3 specifically directs the Court to the table in § 2B1.1 which clearly states loss. Read together § 2S1.3 must be referring the Court to the value of the loss. Thus it is the value of the amount loss that the Court must consider as it considers the guidelines. Here there can be little doubt but that there was no loss. The banks involved earned money from each transaction, the Eritrean Embassy earned money from each transaction and the people who used the Embassy to transmit money home to Eritrea received the service for which they paid. There was no loss. Accordingly Mr. Keleta's guideline range is 0-6 months based on an offense level of 6.

In the alternative if the Court decides that § 2S1.3 and § 2B1.1 should be read to require a substantially more harsh sentence where there was no loss, then Court may depart downward based on Application note 19(C) Downward Departure Consideration which permits the Court to depart where the offense level substantially overstates the seriousness of the offense. The facts of this case certainly merit such a departure. The money transferred was sent to people who are poor and starving. While it is true Mr. Keleta did not have a license the went to the bank, the embassy and the people to whom the money was intended. This was not the type offense that should receive such a harsh sentence.

I.      Nature of Crime and Characteristics of Mr. Keleta.

The money transmitting business established by the Eritrean Embassy permitted Eritrean citizens to send money home to friends and relatives who without a doubt needed the money. The government's witness Fessahaie Tekle testified that he initially set up the money transmitting business so that Eritreans could send money to home. Tekle described the conditions in Eritrea and the fact that Eritreans needed the money sent home to survive and that it was the money that the Embassy transmitted that met this vital need.

The government begrudgingly concedes that Mr. Keleta did not send money to terrorists. Rather than make the unsubstantiated claim that he transferred money to terrorists the government instead dangles that possibility before the Court hoping that the Court will see this as one more opportunity to strike a blow against terrorism. No matter that there is no proof that such a blow will actually be against terrorist. The government states that ". . . Himbol serviced several countries in East Africa and the Middle East where groups inimical to the United States operate." The government goes on to make the unsubstantiated claim that ". . . while Keleta was running the business, a handful of individuals used Himbol in the District of Columbia to evade the former U.S. sanctions against Libya."

Interestingly, the government anticipates that Mr. Keleta will argue that his crime was merely a failure to comply with regulatory requirements. In an effort to counter this position the government vilifies Mr. Keleta because Himbol transmitted money to East African and Middle Eastern countries that have groups inimical to the United States. The government neglects to inform the Court that companies such as Western Union send money to Lybia, Iraq, Kazakhstan, Syria, Yemen and many others. MoneyGram International transfers money

to the same countries. Yet the only difference between these companies and Himbol is a license to transmit money.

The government next claims that the "particularly aggravating factor in this case." is that Mr. Keleta acted willfully. And because he knew that the business had no license he does not deserve leniency. This argument is, in words used by the government, "completely wrong." 18 U.S.C. § 1960 requires that a person <u>knowingly</u> operate a business that is not licensed. To say that it is particularly aggravating when a person acts willfully and therefore deserves no leniency is the equivalent of saying that a person deserves no leniency because he committed a crime. Such a claim leads to the conclusion that no one deserves leniency. Our system of justice does not support such a proposition. The nature of the subject crime is far from heinous. It is a financial crime which had the desired effect of helping thousands of hungry and poor Eritreans. There were no illegal drugs involved, no violence and no weapons used to commit the crime.

Mr. Keleta is married and has children who he supports. Since being convicted of this crime it has been far more difficult to support his family. Upon his conviction the government immediately placed a press release on its website. This press release was read by many people including the bank to which Mr. Keleta applied for a loan. Mr. Keleta is in financial ruin and is all but bankrupt. The government claims that it has sympathy for Mr. Keleta because he has a young family and had managed to rise from humble circumstances. However, these hardships Mr. Keleta and his family may face are not unusual in these circumstances. Ergo, it's ok.

Mr. Keleta hopes the Court will not take so cavalier an attitude toward the suffering of a young family. The Court is permitted to consider this as one of the factors the federal

sentencing guidelines do not consider. The guidelines provide no reduction or increase in sentence for the loss a family will face if the primary provider is incarcerated. It is common knowledge that the lack of a parent or spouse wrecks havoc on the individual home as well as the community. This potential damage can be avoided with the imposition of a sentence that does not included incarceration.

> II.   Incarcerating Mr. Keleta does not need to be incarcerated.

Incarcerating Mr. Keleta will not make our nation any safer and it will not deter further crime, nor will a term of incarceration provide Mr Keleta with needed education or vocational training. Mr. Keleta has learned to respect the law throughout this ordeal. He certainly will never knowingly commit a crime and those who know him have written letters to the Court in support of Mr. Keleta.

> III.  A term of supervised release is not inconsistent with sentences given to similarly situated defendants

As the government indicates the Court can consider sentences imposed in similar cases. In addition to the cases cited by the government the Court should consider <u>United States v. Rasheed Qadir Qambari</u>, 5:05CR0047 (W.D. Va.); Mr. Qambari was found guilty by a jury of Operation of Unlicensed Money Transmitting Business. The total amount of money transferred is not reflected on the verdict form or on the judgment. However, the indictment specifies that the business operated from 1998 to 2005. Mr. Qambari was sentenced to a three (3) year term of probation. <u>United States v. Ahmed Haji Abdullah</u>, 05CR0043 (W.D. Va.) In a similar Mr. Abdullah plead guilty to one count of Operating Unlicensed Money

Transmitting Business and one count of Criminal Forfeiture.  According to the Memorandum in Aid of sentencing Mr. Abdullah transferred a total of $1,413,741 to California, Colorado, Saudi American Bank, Ankara Turkey, Athens, Greece, Grand Rapids Michigan and others.  Mr. Abdullah was sentenced to 18 months probation.

<u>United States v. Amir Rashid</u>, 05CR0048 (W.D. Va.).  In Mr. Rashid's sent $305,618 to the United Kingdom, Turkey, Dubai, Kuwait and Jordan.  Mr. Rashid plead guilty to Operating Unlicensed Money Transmitting Business and one count of Criminal Forfeiture.  Mr. Rashid was sentenced to 18 months probation and forfeiture of $1,018.

Mr. Keleta's is more like the above referenced cases than those cited by the government.

## CONCLUSION

Mr. Keleta does not deserve to be incarcerated.  His actions were not those of a person with evil intent.  To the contrary although his actions violated the law they help people in need.  Accordingly he should receive a sentence commensurate with his actions – a term of propbation.

Respectfully submitted,

/s/
James W. Beane, Jr.

2715 M Street, NW
Suite 200
Washington, D.C. 20007
(202) 333-5905

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Aid of Sentencing was served via the Court's ECF system this 25th day of January, 2007, on Assistant United States Attorney, Jay Bratt.

/s/
James W. Beane, Jr.