IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-371-01 (CKK) |
| | : | |
| v. | : | |
| | : | |
| KESETBRHAN M. KELETA, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE PENDING APPEAL

Introduction

The defendant, Kesetbrhan Keleta, has filed a motion for release pending appeal pursuant to Rule 46, Fed. R. Crim. P., and 18 U.S.C. § 3143(b).[1] The motion completely fails to establish

---

[1] Keleta also purports to bring his motion under 18 U.S.C. § 3142; however, § 3142 only addresses the issue of pre-trial detention. In addition, Keleta has appended to his motion a declaration in which he alleges that his trial counsel provided ineffective assistance. In United States v. Palmer, 296 F.3d 1135 (D.C. Cir. 2002), the D.C. Circuit held:

> [W]e conclude that the court may recharacterize a post-conviction motion under another rule or law as a section 2255 motion only if it first ensures that the movant is fully informed of section 2255's restriction on second or successive 2255 motions as well as other procedural hurdles implicated by recharacterization and the court offers the movant an opportunity to withdraw his motion.

296 F.3d at 1146. Because the Court here refrained from invoking the procedures mandated in Palmer, the government is not treating Keleta's motion as one brought under 28 U.S.C. § 2255, and it is not responding to it as such. In any event, the federal bail statute does not apply to a defendant who is seeking post-conviction relief under § 2255. United States v. Kelly, 790 F.2d 130, 139 (D.C. Cir. 1986). See also Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985) (Bail Reform Act is inapplicable to a defendant seeking release during the pendency of a collateral attack against a conviction). A court retains inherent authority to order release pending resolution of a § 2255 motion. Baker v. Sard, 420 F.2d 1342, 1343 (D.C. Cir. 1969). "However, when the attack is collateral, the release request ordinarily must be measured against a heightened standard requiring a showing of exceptional circumstances." Id. Keleta's motion, even if construed as a § 2255 motion, makes no showing of such exceptional circumstances.

that his appeal raises a substantial question of law or fact that is likely to result in a reversal of both of his convictions or in a sentence that would require him to serve less time than he already has served. Accordingly, the Court should deny Keleta's request for release pending appeal.

## Background

On October 6, 2005, a federal grand jury in the District of Columbia returned a two-count indictment charging Keleta in each count with violating 18 U.S.C. § 1960, which makes it unlawful for any person to conduct, control, manage, supervise, or direct an unlicensed money transmitting business that affects interstate or foreign commerce.[2] The business in question was Himbol Financial Services ("Himbol"), which operated out of space in the Eritrean Cultural and Civic Center at 600 L Street, NW. Between June 26, 2006, and June 29, 2006, the Court conducted a jury trial in this matter. On June 29, 2006, the jury convicted Keleta on both counts. On January 26, 2007, the Court sentenced Keleta to serve 31 months of incarceration concurrently on both counts, followed by two years of supervised release. Keleta filed a timely notice of appeal. On March 29, 2007, Keleta surrendered to the Federal Bureau of Prisons.

At trial, there were two issues that the parties contested. First, Keleta disputed whether he conducted, controlled, managed, supervised, or directed Himbol. He also disputed whether he had knowledge of the District of Columbia's requirement that the money transmitting business be

---

[2] As the Court is aware, the reason the indictment charged two separate counts alleging violations of the same statute is that the Patriot Act amended § 1960 to remove the element requiring proof that a defendant knew that it was unlawful to operate a money transmitting business without a license. The change in the law became effective on October 26, 2001, and the second count of the indictment covered Keleta's activities after that date.

licensed.³  The government presented overwhelming evidence on both of these questions.

First, two former Himbol employees – Tsigereda Gebru and Yonas Solomon – testified that, during the periods of time when Keleta was at Himbol, he was the person who ran the operation.  He would set their schedules and approve any cash transaction over $500.  In the case of Mr. Solomon, Keleta hired him.  The government also had Joseph Bishop testify.  Keleta had enlisted Mr. Bishop to be his partner in preparation for taking over ownership of Himbol.  Mr. Bishop testified that, when he observed Keleta at Himbol at the 600 L Street location, Keleta would be supervising the other employees and generally trying to make the operation run more efficiently.  Last, the government put in summaries of financial records that showed that, during the time period covered in the indictment, Keleta sent $8.3 million in wire transfers on behalf of Himbol, authorized $2.8 million in daily funds transfers on behalf of Himbol's customers, and received approximately $157,000 in salary and expense reimbursements.  The government argued that the amount of money that Keleta was entrusted to handle demonstrated that he was not someone with a limited role at Himbol, but rather that he possessed a significant degree of authority and responsibility.⁴

With respect to the question of Keleta's knowledge of the licensing requirement,

---

³ Keleta did not dispute that Himbol's business affected interstate and foreign commerce and that Himbol lacked a license from the District of Columbia to operate as a money. Notwithstanding Keleta's implicit concession on these issues, the government presented evidence establishing those facts.

⁴ To further bolster the conclusion that Keleta was a person of responsibility at Himbol, the government called Tiyanjay Mbaya, who used to work in the embassy banking division of the former Riggs Bank.  According to Ms. Mbaya, during 2001 and 2002, she would see Keleta approximately once or twice a month at Riggs Bank transacting business on behalf of Himbol. Some of that business involved Keleta's sending large wire transfers from the Himbol account, an account on which Keleta was an authorized signatory.

Fessahaie Tekle, the Administrator at the Embassy of Eritrea, testified that, when Keleta discussed working for Himbol with a representative from the company, Kubrom Dafla, he was told that one of his duties would be to get a license for the business. The government also offered in evidence the contract between Keleta and Himbol (Government Exhibit 7), which expressly gave Keleta the responsibility for licensing Himbol in the United States. Moreover, Mr. Solomon testified that Keleta had told him that he was in the process of getting a license for Himbol, even though the business was functioning without one. Last, Mr. Bishop testified about how he and Keleta prepared and submitted a license application for Himbol, and related paperwork, with the former D.C. Department of Banking and Finance. Throughout the nine months that the application was pending, Keleta continued to run Himbol, even though he knew that it lacked a license.[5]

## Legal Standards

Title 18, United States Code, § 3143(b) sets forth a three-part test for determining whether a defendant may be released pending appeal.[6] The defendant must establish by clear and

---

[5] The District of Columbia eventually issued a license for Himbol in February 2002; however, that license was only valid for a location on Eastern Avenue, and Himbol never opened operations there. For the second count of the indictment, the government also introduced evidence that Keleta had never registered Himbol the Department of the Treasury. In response to an interrogatory in the jury verdict form for Count Two, the jury indicated that it was unable to reach a decision on whether Himbol was registered with the Department of the Treasury. However, the jury indicated that it had found beyond a reasonable doubt that Himbol lacked a license from the District of Columbia.

[6] In the ordinary case, the request for release pending appeal will come at the time of sentencing. That did not occur here. The statute does not place a time limitation on the filing of a motion for release pending appeal, and the government has found at least one case in which the motion occurred after a defendant had begun serving his period of incarceration. See United States v. Capanelli, 2004 WL 15422247 (S.D.N.Y. July 9, 2004) (motion for release pending appeal denied). The government has not found a case in which a defendant who already had

convincing evidence that (1) he is not likely to flee or pose a danger to the community, (2) that the appeal is not for the purpose of delay, and (3) that it "raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). See also United States v. Libby, 498 F. Supp.2d 1, 3 (D. D.C. 2007) (defendant bears the burden of establishing eligibility for release pending appeal).

Here, the government is not contending that Keleta is a flight risk or that he has brought his appeal for purposes of delay.[7] However, Keleta cannot show that his appeal presents a substantial question of law or fact. The D.C. Circuit has defined a substantial question for purposes of § 3143(b) as "a close question or one that very well could be decided the other way." United States v. Perholtz, 836 F.2d 554, 555 (D.C. Cir. 1987), cert. denied, 488 U.S. 821 (1988), (internal quotations omitted). In Perholtz, the court of appeals stated that it had adopted such a "a demanding standard, because it appears better to accord with the expressed congressional intent to increase the required showing on the part of the defendant." Id. at 555-56. The Circuit further observed that "[t]he law has shifted from a presumption of release to a presumption of valid conviction." Id. at 556. Moreover, if a defendant has been sentenced concurrently on

---

begun serving his sentence was later released on bond pending appeal.

[7] Although the government is refraining from arguing that Keleta has failed to meet his burden in demonstrating that he is not a flight risk, it is a closer question now because he has experienced prison life first hand and certainly has a greater incentive to flee. As the Seventh Circuit had observed, "[b]reaking a sentence in the middle does not promote any end other than reducing the effective penalty by allowing a holiday or, worse, providing an opportunity to escape." United States v. Krilich, 178 F.3d 859, 862 (7th Cir.), cert. denied, 528 U.S. 810 (1999).

multiple counts of conviction, the defendant must demonstrate that a substantial question exists with respect to each count of conviction.  Id. at 557.

## Argument

### Keleta Has Failed to Demonstrate that His Appeal Raises a Substantial Question of Law or Fact

The brief that Keleta's first appellate counsel filed attacks his conviction on the sole ground that 18 U.S.C. § 1960 is unconstitutionally vague and is subject to arbitrary enforcement.  This is not a claim that Keleta made before this Court, and he therefore has waived it on appeal.  Such a situation precludes any finding that Keleta has met his burden of demonstrating a substantial question of law or fact for purposes of securing release under § 3143(b).  In any event, even if the D.C. Circuit were to consider whether this Court committed plain error in failing *sua sponte* to dismiss the indictment, Keleta would not prevail.[8]  Attached as Exhibit 1 to this memorandum is the brief that the government filed in the D.C. Circuit in response to Keleta's appeal.  It sets forth all of the reasons why, under any standard of review, Keleta cannot prevail on a claim that § 1960 is void for vagueness.

On September 13, 2007, Keleta filed a *pro se* supplemental brief.  After Keleta filed the brief, the D.C. Circuit referred the matter to the Federal Public Defender for the appointment of a new appellate counsel to advise and represent Keleta on his appeal.  It is thus unclear whether the new counsel will withdraw the *pro se* brief and what additional issues will be offered on appeal.  In any event, a review of the brief that Keleta filed shows that it, too, raises no substantial

---

[8] Because the plain error standard is so difficult for a defendant to satisfy, an appeal that is subject to plain error review almost by definition fails to present a substantial question.  See, e.g., United States v. Geddings, 497 F. Supp.2d 729, 737 (E.D. N.C. 2007); United States v. Pulley, 730 F. Supp. 55, 59 (W.D. Ky. 1990).

question of law or fact.[9]

As is often the case with *pro se* filings, Keleta's brief is, at times, difficult to follow. However, on page 11 of the brief, Keleta sets forth the following alleged errors:

(1) "the indictment is defective and insufficient and should be dismissed becuase [sic] it lacks all essential elements of the District of Columbia, Banking and Financial, Law, 13-140, §§ 10, 28, 47 DCR 3431, Legislative History of law 13-140";

(2) "the indictment was defective becuase [sic] it failed to adequately inform the District of Columbia statute because of the 18 U.S.C. A § 1960 is void for vagueness";

(3) "§ 1960 fails to provide clear notice of WHO is required to obtain a license";

(4) "the government failed to establish that the lack of license was Knowingly and Wilful, i.e. that the defendant knew that his lack of license was illegal and that he acted or failed to act intentionally or with respect to that fact";

(5) "the court erred sentencing the defendant under the section . . . as a leader or supervisor . . ."; and

(6) "the government failed to prove that the defendant acted knowing that he had an obligation to register the unlicensed business with the U.S. Treasury and that [sic] wilfully failed to do so.

With respect to the first alleged error, Keleta never raised this issue below and thus waived it. Notwithstanding that failure, Keleta cannot show that the Court committed plain error in failing to dismiss the indictment on its own because of such an alleged deficiency. The gist of Keleta's argument appears to be that it was the Embassy of Eritrea, not he, that had the

---

[9] The government is attaching Keleta's *pro se* brief as Exhibit 2 to this memorandum.

responsibility of securing a license for Himbol. See Keleta *Pro Se* Brief at 16-20. In so arguing, Keleta misapprehends the elements of a § 1960 violation. The crime is in conducting, controlling, managing, supervising, or directing an unlicensed money transmitting business. Whether a defendant who played such a role in an unlicensed money transmitting operation had the legal obligation under state law to obtain the necessary license is irrelevant to his guilt or innocence in a prosecution for violating § 1960.[10]

Keleta's second and third assignments of error present the same issue – the void-for-vagueness challenge to § 1960 – that his original appellate counsel presented in the first brief that is on file for Keleta. The government demonstrates above why such an attack on § 1960 does not create a substantial question.

Keleta's fourth claim of error – that the government did not prove that he acted willfully in violating § 1960 – must also fail. The government presented overwhelming evidence, both through testimony and through documents, that Keleta knew from the very beginning of his association with Himbol that it needed a license. Willfulness was only an element for the first count of the document. The Court instructed the jury as to Count One that it needed to find that Keleta knew that the District of Columbia required a license for the operation of Himbol as a money transmitting business. The jury found Keleta guilty of this count. Given the strength of the government's evidence and the deference that a court of appeals accords to a jury's verdict[11],

---

[10] In his brief, Keleta quotes at length from the district court's decision in United States v. Talebnejad, 342 F. Supp.2d 346 (D. Md. 2004). See Keleta *Pro Se* Brief at 20-29. This Court rejected Talebnejad's reasoning in denying Keleta's Rule 29 motion. See United States v. Keleta, 441 F. Supp.2d 1 (D. D.C. 2006). The Fourth Circuit has since reversed the lower court decision in Talebnejad. See United States v. Talebnejad, 460 F.3d 563 (4th Cir. 2006).

[11] See, e.g., United States v. Lucas, 67 F.3d 956, 959 (D.C. Cir. 1995).

Keleta's sufficiency challenge to his conviction hardly raises a substantial question of law or fact.[12]

With respect to Keleta's fifth assertion of error – that the Court erroneously increased his Guidelines offense level pursuant to § 3B1.1(c) to reflect his status as an organizer or leader – this is another claim that he failed to raise to the Court and, at best, will be subject to review for plain error.[13] Once again, the evidence supporting the conclusion that Keleta played a managerial role in the offense was overwhelming. Indeed, such proof was at the heart of the government's case. The Court of Appeals will review the Court's factual findings underlying its application of the advisory Guidelines for clear error and will give "due deference" to the Court's application of the Guidelines to the facts. E.g., United States v. Dozier, 162 F.3d 120, 123 (D.C. Cir. 1998). Keleta's challenge to his sentence does not present a substantial question of law or fact.[14]

Last, Keleta claims that the government failed to prove that he knew he had to register Himbol with Department of the Treasury. The failure to register with the Department of the Treasury was an alternative theory of guilt under the second count of the indictment. The jury, however, in answering a special interrogatory from the Court, indicated that it was unable to

---

[12] As noted above, proof of willfulness was only an offense element for Count One. Even assuming that the government failed to adduce sufficient evidence of Keleta's knowledge of D.C.'s licensing requirement for Himbol – an assumption that the record clearly contradicts – such a deficiency would not affect his conviction on Count Two. Under Perholtz, unless both convictions are invalid, the appeal does not raise a substantial question. See 836 F.2d at 557.

[13] Keleta's *pro se* brief contains no discussion of why the Court allegedly erred in applying § 3B1.1.

[14] It is also worth noting that the Court gave Keleta a substantial departure from the recommended Guidelines sentencing range pursuant to United States v. Booker, 543 U.S. 220 (2005). Thus, any error in applying the Guidelines here – of which there was none – is likely harmless.

reach a conclusion as to whether Himbol had registered with the Department of the Treasury. Thus, even assuming the government had to prove for Count Two that Keleta knew of the Treasury registration requirement (despite the plain language of § 1960), any failure of proof on this issue was harmless.

## **Conclusion**

For the foregoing reasons, the Court should deny Keleta's motion for release pending appeal.

                                          Respectfully submitted,

                                          JEFFREY A. TAYLOR
                                          UNITED STATES ATTORNEY
                                          D.C. Bar No. 498610

By:                 /s/                       
            Jay I. Bratt
            Assistant United States Attorney
            Illinois Bar No. 6187361
            National Security Section
            Room 11-437
            555 Fourth Street, NW
            Washington, D.C. 20530
            (202) 353-3602
            Jay.Bratt@usdoj.gov

**Certificate of Service**

  I, Jay I. Bratt, certify that I served the foregoing Government's Memorandum in Opposition to Defendant's Motion for Release Pending Appeal by mail on

  Kesetbrhan M. Keleta
  BOP # 28889-016, MVCC - D6
  Philipsburgh, PA 16866

this 22nd day of October, 2007.

                    /s/