# EXHIBIT 1

ORAL ARGUMENT NOT YET SCHEDULED

BRIEF FOR APPELLEE

———————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 07-3021

———————————

UNITED STATES OF AMERICA,                        Appellee,


     v.


KESETBRHAN M. KELETA,                            Appellant.


———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————


JEFFREY A. TAYLOR,
United States Attorney.

ROY W. McLEESE III,
MARY B. McCORD,
JAY BRATT,
* LESLIE ANN GERARDO, D.C. BAR #419823,
Assistant United States Attorneys.

555 Fourth Street, N.W., Room 8227
Washington, D.C.  20530
(202) 514-7088

*    Counsel for Oral Argument



Crim. No. 05-731 (CKK)

CERTIFICATE AS TO PARTIES,
RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. Rule 28(a)(1), appellee, the United States of America, hereby states as follows:

A.    <u>Parties and Amici</u>:  The parties  to  this appeal are appellant, Kesetbrhan M. Keleta, and appellee, the United States of America.  There are no intervenors or <u>amici</u>.

B.    <u>Rulings Under Review</u>: Appellant Keleta challenges the decision of the Honorable Colleen Kollar-Kotelly, imposing sentence after conviction of two counts of violating 18 U.S.C. § 1960, and contends that the indictment against him should have been dismissed <u>sua</u> <u>sponte</u> because the statute was unconstitutionally vague.

C.    <u>Related Cases</u>: There are no related cases and this case has not previously been before this Court.

# I N D E X

                                                          **Page**

COUNTERSTATEMENT OF THE CASE . . . . . . . . . . . . . . . . 1

COUNTERSTATEMENT OF THE FACTS . . . . . . . . . . . . . . . 2

    The Government's Evidence  . . . . . . . . . . . . . . 2

    The Defense Evidence . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . 11

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . 11

    The District Court Did Not Plainly Err by Failing to
Dismiss the Indictment, Because 18 U.S.C. § 1960 is Not
Unconstitutionally Vague as Applied to Appellant . . . . 11

        A.   Standard of Review . . . . . . . . . . . . . 11

        B.   The Void-for Vagueness Doctrine  . . . . . . . 13

        C.   Discussion . . . . . . . . . . . . . . . . . 14

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . 19

ii

TABLE OF CASES

Page

Bordenkircher v. Hayes, 434 U.S. 357 (1978) . . . . . . . .  17

Coates v. Cinncinnati, 402 U.S. 611 (1971) . . . . . . . .  18

Davis v. United States, 411 U.S. 233 (1973) . . . . . . . .  11

Grayned v. City of Rockford, 408 U.S. 104 (1972) . . . . .  18

Johnson v. United States, 520 U.S. 461 (1997) . . . . . . .  12

Kolender v. Lawson, 461 U.S. 352 (1983) . . . . . . . .  13, 18

Oyler v. Boles, 368 U.S. 448 (1962) . . . . . . . . . . .  17

Smith v. Goquen, 415 U.S. 566 (1974) . . . . . . . . . .  17

United States v. Baucum, 80 F.3d 539
    (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . .  12

United States v. Graham, 305 F.3d 1094
    (10th Cir. 2002) . . . . . . . . . . . . . . . . . . .  16

United States v. Keleta, 441 F. Supp.2d 1
    (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . .  15

United States v. Lancaster, 968 F.2d 1250
    (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . .  14

* United States v. Maude, 481 F.2d 1062 (D.C. Cir. 1973) . .  16

United States v. Nadi, 996 F.2d 548 (2d. Cir.),
    cert. denied, 510 U.S. 933 (1993) . . . . . . . . . . .  13

United States v. National Dairy Prods. Corp.,
    372 U.S. 29 (1963) . . . . . . . . . . . . . . . . . .  14

* United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003) .  12, 13

* Cases chiefly relied upon are marked by an asterisk.

iii

Page

United States v. Salerno, 481 U.S. 739 (1987) . . . . . . .  13

United States v. Smith, 267 F.3d 1154
    (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . .  13

United States v. Thomas, 864 F.2d 188
    (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . .  13, 14

United States v. Weathers, 186 F.3d 948
    (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . .  11, 12

Village of Hoffman Estates v. Flipside, Hoffman Estates,
    Inc., 455 U.S. 489 (1982) . . . . . . . . . . . . . . .  18

## OTHER REFERENCES

18 U.S.C. § 1960 . . . . . . . . . . . . 1, 11, 12, 14, 15, 18

18 U.S.C. § 1960(b)(1)(B) . . . . . . . . . . . . . . .  15

18 U.S.C. § 842(a)(1) . . . . . . . . . . . . . . . . .  16

Fed. R. Crim. P. 12(b) . . . . . . . . . . . . . . . .  11

Fed. R. Crim. P. 12(f) . . . . . . . . . . . . . . . .  12

Fed. R. Crim. P. 52(b) . . . . . . . . . . . . . . . .  12

D.C. Code § 26-1023(c) . . . . . . . . . . . . . . . .  10

iv

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee relies on the pertinent statutes and regulations contained in the addendum to this Brief.

v

## ISSUE PRESENTED

In the opinion of appellee, the following issue is presented:

Whether 18 U.S.C. § 1960 is unconstitutionally vague as applied to appellant, such that the district court plainly erred in failing _sua_ _sponte_ to dismiss the indictment, where the terms employed in the statute to describe the prohibited conduct were sufficiently definite to provide notice to appellant that his specific conduct was prohibited.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 07-3021

———————————

UNITED STATES OF AMERICA,                        Appellee,

     v.

KESETBRHAN M. KELETA,                            Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

BRIEF FOR APPELLEE

———————————

COUNTERSTATEMENT OF THE CASE

The grand jury charged appellant with two counts of prohibition of an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960.[1] The first count related to conduct occurring between March 2001 and October 25, 2001. Because the statute was amended on October, 26, 2001, the second count related to conduct occurring between October 26, 2001, and September 2002, and reflected the revised statutory language.

———————————

[1] Copies of the indictment, jury verdict form, final judgment, and notice of appeal are contained in appellee's unnumbered addendum, and are not reproduced in this Brief. "Tr." refers to the four-volume, consecutively paginated transcript of trial proceedings on June 26 through 29, 2006.

2

On June 26, 2006, a jury trial commenced before United States District Judge Colleen Kollar-Kotelly.  On June 29, 2006, the jury returned guilty verdicts on both counts of the indictment.  Judge Kollar-Kotelly orally imposed sentence on January 26, 2007, and final judgment was entered on January 29, 2007.  Appellant was sentenced to a term of imprisonment of 31 months on each count, to run concurrently, and to be followed by a two-year period of supervised release.  Appellant filed a timely notice of appeal on February 2, 2007.

### COUNTERSTATEMENT OF THE FACTS

#### The Government's Evidence

Beginning in approximately 1993, as a service to Eritrean citizens living in the United States, the Eritrean Embassy would occasionally send money to Eritrea, using embassy bank accounts to transfer the funds (Tr. 381, 396-97).[2/]  Eventually, in 1994, the need for transferring funds increased, so the embassy established a money transmitting business at 600 L Street, Northwest, at the Eritrean Cultural and Civic Center (Tr. 381, 423).  The money transmitting business was originally called "Red Sea Corporation,"

---

[2/]    Eritrea is a small country in northeast Africa, which gained its independence between 1991 and 1993 (Tr. 379).  The capital of Eritrea is Asmara (Tr. 378-79).  Eritrea is an impoverished country, where there is "always [a] shortage of food" (Tr. 420, 421).

3

and a financial officer with the embassy, Fessahaie Tekle, oversaw the operations of the business (Tr. 382, 383, 425).[1/]

In March 2000, Mr. Tekle met appellant, who was introduced to him as someone who knew about computer programming and office management (Tr. 387, 388). Mr. Tekle hired appellant to handle a small project regarding the computer data system at 600 L Street (Tr. 389, 432). Appellant completed that project (Tr. 389).

In August 2000, "Himbol Financial Services" ("Himbol"), took over the "Red Sea" money transfer operations (Tr. 382). Kubrom Dafala, the manager of Himbol's offices in Asmara, came to Washington to set up the new business (Tr. 389). Appellant and Mr. Dafala were introduced by Mr. Tekle (Tr. 390). Mr. Dafala wanted appellant to assist Himbol in getting an operational website, and also in obtaining a license for the money transfer business (Tr. 390, 391). Appellant agreed to handle both projects (Tr. 391, 392).

At the beginning of 2001, appellant returned from a trip to Eritrea with a written contract between himself and Himbol (Tr. 393). Appellant told Mr. Tekle that he had been hired by Himbol to manage the business (Tr. 393). Mr. Tekle explained that "I was the

---

[1/]    Mr. Tekle entered into a "limited" immunity agreement with the government (Tr. 384-85, 454). A copy of the immunity agreement was admitted in evidence (Tr. 386).

4

one responsible before that, so [appellant's] kind of taking over the management," but Mr. Tekle also explained that appellant's agreement with Himbol was "[f]irst to learn the business, and then try to find somebody to manage it, the daily activities" (Tr. 393). Appellant was also expected to "research on the license issue and also mak[e] a website" (Tr. 395).[4] At that point in time, appellant began managing the Himbol office (Tr. 394).

Himbol transferred money to bank accounts in Eritrea, but also enabled customers to send money to Eritrean nationals in other parts of the world, such as Kenya, Saudi Arabia, and Europe (Tr. 303). Appellant and Mr. Tekle went to a bank, where appellant became a signatory on an embassy bank account that was used by Himbol to transfer funds (Tr. 395-397).

Tsigerada Gebru, a native of Eritrea who was employed by Himbol from 2001 until 2004, testified that appellant was her "boss" (Tr. 292, 296-97, 301, 303, 340).[5] Ms. Gebru was a cashier or clerk, and as such assisted customers in completing money transfer forms, and helped to maintain Himbol's data and records of transactions (Tr. 302, 308, 359). Appellant trained her to use

---

[4]    The contract, which required appellant to "register[]" Himbol in the USA," was admitted in evidence (Tr. 400).

[5]    Ms. Gebru explained that "Mr. Fessahaie Tekle hired me, but he told me my boss would be [appellant]" (Tr. 301).

5

Himbol's computer system (Tr. 359).  Each day, Ms. Gebru would
print out the transactions for that day, check that the data
balanced with the money that she received, and pass the information
along to appellant (Tr. 308, 320).  Appellant instructed her not to
receive more than $500 cash for a transaction without his
authorization (Tr. 307-08).[5]  Appellant approved particular
transactions, answered Ms. Gebru's questions about transactions,
and took the money to the bank (Tr. 331).[7]

Mr. Tekle also testified that appellant had the power to hire
and fire employees, to approve and disapprove of transactions, to
pay employee salaries, to incur expenses on behalf of the business,
and to do wire transfers through Riggs Bank (Tr. 410-11).[8]
Appellant reported to Himbol's home office in Asmara, and no one in
the United States (other than, for a brief period, Mr. Melake) had

---

[5]    Appellant was not present at the Himbol offices all day
every day; indeed, there were times when he returned to Eritrea
(Tr. 330, 365).  During those periods, the business was run by
Melake Tesfayohannes ("Mr. Melake"), a diplomat from the Eritrean
Embassy (Tr. 330, 401, 428, 524).  Mr. Melake had diplomatic
immunity (Tr. 457-58).

[7]    Ms. Gebru also explained that in order to get approval
for her vacation time, or to change her work hours, she had to go
to appellant (Tr. 331).

[8]    In particular, appellant hired Yons Solomon, a family
friend, who worked at Himbol for approximately one month in the
summer of 2002 (Tr. 464, 465).  However, Mr. Tekle had hired Ms.
Gebru (Tr. 451).

6

authority over appellant (Tr. 412).  Appellant left Himbol's employ
at the end of 2002 (Tr. 364, 402).  Upon his departure, Mr. Melake
took his place (Tr. 364).

Joseph Bishop, a personal friend of appellant, was aware that
appellant was working for a money transfer operation at 600 L
Street, Northwest, and believed appellant "was working like a
manager or supervisor of at least two people at that time" (Tr.
473, 475).  Mr. Bishop had visited appellant at the business and
observed him giving instructions to people, taking money from them,
and faxing information (id.).  In 2001, appellant approached Mr.
Bishop to determine whether Mr. Bishop was interested in
establishing a money transfer business with him (Tr. 474, 476).
Mr. Bishop was at first reluctant, because he did not want to incur
any debt or get involved with starting up a company, but appellant
presented him with receipts or paperwork showing the daily intake
for the money transmitting business at 6th and L, and alleviated Mr.
Bishop's concern about "lean years" (Tr. 476-77).

Appellant told Mr. Bishop that their new company, "Himbol
Financial Services, Incorporated" ("Himbol, Inc."), would take over
the customers from the money transmitting business at 600 L Street
(Tr. 476, 477, 500, 509).  Mr. Bishop agreed to be president of the
company (Tr. 478).  Appellant and Mr. Bishop went to the District
of Columbia Department of Consumer and Regulatory Affairs to get an

7

occupancy license for the operation of Himbol, Inc., at 6th and L
Streets, but were told that they could not operate a money transfer
business at that location "because the only thing that was
authorized at that facility was an eatery" (Tr. 478, 479).  They
then rented space in an office building at 7826 Eastern Avenue (Tr.
479-80).

From speaking with appellant, Mr. Bishop learned that their
business would need a money transmitting license from the District
of Columbia Department of Banking and Financial Institutions (Tr.
480).  The forms that were completed for this purpose were shown to
the jury and reviewed with Mr. Bishop (Tr. 481-82).  In particular,
there was a paragraph that required a history of operations,
description of activities conducted and description of business
activities in which the applicant sought to be engaged (Tr. 484).
No response to this question was entered on the application (id.).
Neither Mr. Bishop nor appellant disclosed that the existing money
transmitting business at 600 L Street was operating under the name
"Himbol" (Tr. 487).

The application for a money transmitting license for Himbol,
Inc., was pending between May 2001, and February 2002, and during
that time appellant continued to work at Himbol at 6th and L (Tr.
489).  Ultimately, appellant and Mr. Bishop did get a license from
the Department of Banking and Finance (Tr. 488).  However, the

8

license was for Himbol Financial Services, located at 7826 Eastern Avenue, Northwest (Tr. 489). Although some steps had been taken to outfit that location, no money transfer business was ever opened on Eastern Avenue (Tr. 489).[2/]

Through Ms. Gebru, Mr. Tekle, and Tiyanjana Mbaya, a former officer with Riggs Bank, the government introduced business records of Himbol documenting money transfer transactions authorized by appellant (Tr. 327-29, 510-522). Not all of the money transfer documents maintained by Himbol were authorized by appellant (Tr. 435). Special Agent Katerina Gikas, from the Department of Homeland Security, Immigration and Customs Enforcement, testified as a summary witness to explain to the jury the contents of the documentary evidence (Tr. 527-28). Agent Gikas explained that the total amount of wire transfers requested by appellant from May 2001, to September 2002, was in excess of $8.2 million (Tr. 530-31). The total of wire transfer requests that were made to Himbol and authorized by appellant from May 2001 to July was in excess of $2.8 million (Tr. 532-33). In addition, payments made to appellant himself during the period March 2001, to August 2002, including his salary and various fees, totaled $157,551.95 (Tr. 534-35).

---

[2/]    Yons Solomon had visited the Eastern Avenue offices, and saw a sign on the door that read "Himbol Financial Service" (Tr. 467).

9

Yvonne Burnett, a legal instrument examiner with the Internal Revenue Service, testified that Himbol Financial Services, Inc., had never registered with the Department of the Treasury as a money transmitting business (Tr. 544-546). Indeed, no business with the name "Himbol," nor identified as the "Embassy of Eritrea," "Red Sea Corporation," or in appellant's name was so registered (Tr. 546-47).[10/]

Howard Amer, Associate Commissioner for Banking in the District of Columbia, testified that the District of Columbia requires a money transmitting business to obtain a license to operate (Tr. 555-56). Mr. Amer conducted several searches for the time period January 1, 2001, through December 21, 2002, to determine whether any of the following entities had such licenses: "Red Sea Corporation," "Embassy of Eritrea," and "Kesetbrhan Keleta." (Tr. 558). No license had ever been issued to the first two of these entities; a license had been issued to appellant as an employee of "Himbol Financial Services, Incorporated," in February 2002, to do business at 7826 Eastern Avenue, Northwest, Suite LL-11 (Tr. 558, 559). No license had been issued for that company, or any other company bearing the name "Himbol," before that time (Tr.

---

[10/]    The examiner had not, however, specifically searched for a company named "Himbol Financial Services, PLC," which was apparently the official name of the Himbol money transmitting business at 600 L Street, Northwest (Tr. 456, 548-49).

10

559). Moreover, the license issued to "Himbol Financial Services, Incorporated" did not authorize that company to conduct business at any location other than 7826 Eastern Avenue, Northwest (Tr. 560). Finally, the court took judicial notice of D.C. Code § 26-1023(c), which makes the operation of a money transmission business without a license a felony (Tr. 587).

<u>The Defense Evidence</u>

Sterling Ward, an individual who worked with appellant on a number of business proposals, was asked to describe appellant's reputation for truthfulness in the business community (Tr. 636, 638, 640). Mr. Ward testified that appellant is a "trustworthy, honest, and does things by-the-book kind of guy" (Tr. 640). He also opined that appellant "has a very strong value in doing the right thing and understanding what the right thing is before he does it" (<u>id</u>.). Mr. Ward was not, however, familiar with appellant's activities at 600 L Street, Northwest (Tr. 641), and never saw the application that appellant submitted in order to obtain a money transmitting license (Tr. 642). When asked whether information that appellant had not been fully truthful in that application would change his opinion of appellant's reputation for truthfulness, Mr. Ward replied, "I can't answer that question" (Tr. 643).

11

## SUMMARY OF ARGUMENT

Because appellant failed to present to the district court his claim that the statute under which he was convicted, 18 U.S.C. § 1960, is unconstitutionally vague, he has waived his right to appellate review of this issue. Alternatively, even if appellant could establish cause for his procedural default, he must establish plain error to prevail on this appeal. Moreover, because appellant's challenge to the statute does not implicate First Amendment concerns, the statute must be evaluated as it applies to him, and not with regard to its facial validity. Appellant's conduct was clearly prohibited by the statutory language. Thus, he cannot establish any error, let alone plain error, and his constitutional challenge must be rejected.

## ARGUMENT

The District Court Did Not Plainly Err by Failing to
Dismiss the Indictment, Because 18 U.S.C. § 1960 is Not
Unconstitutionally Vague as Applied to Appellant

### A.    Standard of Review

Under Rule 12(b) of the Federal Rules of Criminal Procedure, defendants must raise certain defenses by pretrial motion, including claims of "'constitutional defects in the institution of the prosecution[].'" United States v. Weathers, 186 F.3d 948, 956

12

(D.C. Cir. 1999) (quoting <u>Davis v. United States</u>, 411 U.S. 233, 236 (1973)).    Failure to comply with this requirement results in a waiver of the defense, unless a showing of cause is made.  Fed. R. Crim. P. 12(f); <u>Weathers</u>, 186 F.3d at 952-53.  Appellant has not shown cause for his failure to raise his due process challenge to 18 U.S.C. § 1960 pretrial, and thus his claim is waived.

Even if the Court has discretion to consider a facial constitutional challenge not presented to the district court, this case would not be a good candidate for such an exercise of the Court's discretion because review would be under the plain-error standard.  <u>See</u> <u>United States v. Baucum</u>, 80 F.3d 539, 544 (D.C. Cir. 1996)(rejecting argument that facial constitutional challenge is jurisdictional, but noting that there may be circumstances in which it is appropriate for the appellate court to exercise its discretion to hear a constitutional claim not raised at trial); <u>United States v. Rybicki</u>, 354 F.3d 124, 147 (2d Cir. 2003)(plain error review required where defendant failed to challenge the vagueness of the statute before the district court); Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").  Appellant cannot prevail under that standard.  <u>See</u> <u>Johnson v. United States</u>, 520 U.S. 461, 467-68 (1997)(appellate court can correct error not raised at trial only if there is (1)

13

"error," (2) that is "plain" or "obvious", (3) that "affect[s] substantial rights," and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings")(internal quotations omitted).  Appellant bears the burden of demonstrating the plainness of the error, the prejudice, and public harm.  <u>United States v. Smith</u>, 267 F.3d 1154, 1160 (D.C. Cir. 2001).

B.   <u>The Void-for-Vagueness Doctrine</u>

An allegation that a criminal statute does not sufficiently define the conduct sought to be prohibited is a form of due process challenge.  <u>See</u> <u>United States v. Thomas</u>, 864 F.2d 188, 194 (D.C. Cir. 1988).  The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  <u>Id</u>. (quoting <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983)).  However, when the interpretation of a statute does not implicate First Amendment rights, a vagueness challenge will be assessed only as the statute has been applied, <u>i.e.</u>, "in light of the specific facts of the case at hand and not with regard to the statute's facial validity."  <u>Rybicki</u>, 354 F.3d at 129 (quoting <u>United States v. Nadi</u>, 996 F.2d 548, 550 (2d. Cir.), <u>cert</u>. <u>denied</u>,

14

510 U.S. 933 (1993)).  See also United States v. Salerno, 481 U.S. 739, 745 (1987)("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid"); United States v. Lancaster, 968 F.2d 1250, 1254 (D.C. Cir. 1992)(statute not vague as applied to defendant's conduct so as to warrant reversal of his convictions)(citing United States v. National Dairy Prods. Corp., 372 U.S. 29 (1963)(court must consider vagueness attack solely in relation to whether statute sufficiently warns defendant that his particular conduct is prohibited thereunder); Thomas, 864 F.2d at 196-97 (rejecting vagueness challenge to regulation that was not vague as applied to defendants)).

### C.  Discussion

Appellant argues that 18 U.S.C. § 1960, which authorizes the punishment of anyone who "conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business," is unconstitutionally vague because it does not define the meaning of the terms "controls," "manages," "supervises," "directs," or owns."  Thus, according to appellant "ordinary people" would not understand what conduct is prohibited (Brief for Appellant at 5-6).  Appellant also claims that the statute is

15

subject to arbitrary enforcement, and that it was in fact arbitrarily applied to him, because he was prosecuted when others were not (<u>Id.</u> at 6).[11]  While appellant does not specifically say so in his brief, he appears to argue that the district court should have <u>sua</u> <u>sponte</u> dismissed the indictment because of these alleged infirmities in the statute.[12]

Appellant identifies no First Amendment right that was infringed by operation of 18 U.S.C. § 1960; indeed, no such right appears to be implicated in this case.  Thus, the issue before this Court is whether the statute provided sufficient notice to appellant that his specific conduct constituted a violation of the law.  Contrary to appellant's claim, it is clear that 18 U.S.C.

---

[11]  Appellant notes that "18 U.S.C. § 1960(b)(1)(B) does not contain a knowledge or wilfulness requirement, nor does 31 U.S.C. § 5330 to which it refers" (Brief for Appellant at 5).  We note that in connection with his motion for judgment of acquittal, appellant argued that a requirement of proof of knowledge or wilfulness should be imputed into 18 U.S.C. § 1960 (Tr. 567-571), a proposition which the district court correctly rejected.  <u>United States v. Keleta</u>, 441 F. Supp.2d 1 (D.D.C. 2006).  Appellant does not renew in his brief the argument that he presented to the district court in this regard, nor does he in any other way elaborate upon the observation regarding the lack of a knowledge or wilfulness requirement.

[12]  In the concluding paragraph of appellant's brief, appellant asks that the judgment against him be vacated and his case "remanded for new trial" (Brief for Appellant at 7).  Given that he is challenging the constitutional validity of the statute under which he was prosecuted, it is unclear how remand would be an appropriate remedy.

16

§ 1960 prohibited precisely the sort of activities in which appellant was engaged for Himbol, an unlicensed money transmitting business.

Appellant was described by several witnesses, including Ms. Gebru and Mr. Bishop, as the "boss," "manager" or "supervisor" of Himbol. As Mr. Tekle testified, appellant had the power to hire and fire employees, to approve and disapprove of transactions, to pay employee salaries, to incur expenses on behalf of the business, and to conduct wire transfers through Riggs Bank (Tr. 410-11). Appellant clearly performed one or more of the roles described by the plain language of the statute. Thus, as applied to appellant, the statute is not unconstitutionally vague. Accordingly, the district court did not plainly err by failing to dismiss the indictment.

We note that appellant's claim would have to be rejected even if the statute were examined without reference to the facts of this case. The active verbs that describe the conduct prohibited by the statute are clear and unambiguous, and when given their ordinary meaning, these verbs provide sufficient notice of the nature of the prohibited conduct. See United States v. Maude, 481 F.2d 1062, 1068 (D.C. Cir. 1973)(noting that a law is sufficiently definite when "its terminology, taken in context, is commonly grasped"); United States v. Graham, 305 F.3d 1094, 1105 (10th Cir. 2002)(phrase

17

"engaged in the business" as used in 18 U.S.C. § 842(a)(1), is to be given its plain and ordinary meaning; "the fact that there may be variations in the ordinary meaning to the term 'business' does not render the term vague for constitutional purposes").

Appellant's second claim, that the statute is subject to arbitrary enforcement, is similarly without merit.  The Supreme Court has recognized that the more important aspect of the vagueness doctrine "is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement."  Smith v. Goguen, 415 U.S. 566, 574 (1974).  Where the legislature fails to provide appropriate guidelines, "a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."  Id. at 575.  However, the government has never been required to prosecute all possible violators of the law; rather, it is prohibited only from using an arbitrary basis to make prosecutorial decisions.  See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)(noting that so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion); Oyler v. Boles, 368 U.S. 448, 456 (1962)(the conscious exercise of some selectivity in enforcement is not a federal constitutional violation so long as

the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification).

The language of 18 U.S.C. § 1960 does not leave enforcement of the statute to the "personal predilections" of the police, precisely because the type of conduct which the statute prohibits is carefully described. The cases cited by appellant (Brief for Appellant at 5, 6) are clearly distinguishable on this basis. See Kolender, 461 U.S. at 361 (invalidating statute requiring persons who, loiter or wander on the streets to provide "credible and reliable" identification to the police); Coates v. Cinncinnati, 402 U.S. 611, 614 (1971)(invalidating statute prohibiting three or more people to assemble and conduct themselves in a manner "annoying" to passers-by).[13] Moreover, as applied to this case, it is clear that the choice to prosecute appellant and not other individuals who may have been involved in the operations of Himbol did not result from the pursuit of "personal predilections" on the part of the

---

[13]    Appellant also cites Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982), and Grayned v. City of Rockford, 408 U.S. 104 (1972), but in both of these cases, the Supreme Court rejected void-for-vagueness challenges.

19

government or other "arbitrary" classifications.[14/]    Appellant clearly violated the law and was prosecuted on that basis alone.

CONCLUSION

WHEREFORE, appellee respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

JEFFREY A. TAYLOR,
<u>United States Attorney</u>.

ROY W. McLEESE III,
MARY B. McCORD,
JAY BRATT,
<u>Assistant United States Attorneys</u>.

_____
LESLIE ANN GERARDO,  D.C. Bar #419823
Assistant United States Attorney
555 4th Street, N.W., Room 8227
Washington, D.C.  20530
(202) 514-7088

_____

[14/]    Mr. Melake, who took over operation of the business after appellant's departure, had diplomatic immunity; Mr. Tekle was given limited immunity in exchange for his testimony against appellant.

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY that this brief conforms to the 14,000 word limit imposed by Fed. R. App. R. 32(a)(7)(B) and that this brief contains 4,091 words.

LESLIE ANN GERARDO, D.C. BAR #419823
Assistant United States Attorney
555 4th Street, N.W., Room 8227
Washington, D.C.  20530
(202) 514-7088

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused two copies of the foregoing Brief for Appellee to be served by first-class mail, postage prepaid, upon counsel for appellant, James W. Beane, Jr., 2715 M Street, N.W., Suite 200, Washington, DC 20007, on this 16th day of August, 2007.

LESLIE ANN GERARDO
Assistant United States Attorney
555 4th Street, N.W., Room 8227
Washington, D.C.  20530
(202) 514-7088