UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KESETBRHAN M. KELETA,<br><br>Defendant. | Criminal Action No. 05-371-01 (CKK) |

**FILED**

FEB 2 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**
(February 20, 2008)

This matter is before the Court on Defendant Kesetbrhan Keleta's [62] Motion for Release Pending Appeal pursuant to 18 U.S.C. § 3143(b)(3). On June 29, 2006, a jury convicted Defendant on two counts of unlawfully operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. The Court sentenced Defendant to a term of 31 months incarceration on January 26, 2007. Defendant, proceeding *pro se*, filed the instant Motion on August 21, 2007. After Defendant received appointed counsel on appeal, Defendant's counsel filed, with leave of this Court, a supplement to Defendant's Motion on January 29, 2008.[1] The Government filed an Opposition to the initial Motion on October 22, 2007, and an Opposition to the Supplement on February 3, 2008. After thoroughly reviewing the Parties' submissions and

---

[1] Defendant's *pro se* Motion argued that he was not a flight risk if he were released and that his trial attorney provided him with ineffective assistance of counsel. *See* Def.'s Mot. at 1-8. Because the combination of these arguments made it unclear whether Defendant intended to seek habeas relief under 28 U.S.C. § 2255, the Court issued an Order asking Defendant to consult with his attorney and notify the Court whether Defendant wanted his Motion characterized as a habeas petition. On December 5, 2007, Defendant's counsel notified the Court that Defendant did not intend to file a habeas petition, and asked that Defendant's Motion be construed as a Motion for Release Pending Appeal under 28 U.S.C. § 3143(b).

the attachments thereto, applicable case law and statutory authority, the Court shall deny Defendant's [62] Motion for Release Pending Appeal for the reasons that follow.

Defendant's Motion is governed by the standards set forth in 18 U.S.C. § 1343(b):

> a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . [must] be detained, unless the judicial officer finds . . . (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The Government does not contend that Defendant is likely to flee, poses a danger to the community, or that his Motion is brought for purposes of delay. *See* Gov't Opp'n dated Feb. 3, 2008 at 5. As such, the Court needs only to determine whether Defendant's appeal raises a substantial question of law or fact likely to result in a reversal, order for new trial, sentence not including a term of imprisonment, or reduced sentence to a term of imprisonment less than that already served plus the expected duration of the appeal process. *See* Def.'s Suppl. at 6 ("the only question is whether [Defendant's] appeal raises a 'substantial question of law' within the meaning of § 3143(b)"). A question raised on appeal is considered "substantial" when it is "a close question or one that very well could be decided the other way." *United States v. Perholtz*, 826 F.2d 554, 555 (D.C. Cir. 1987) (internal citations and quotation omitted), *cert. denied*, 488 U.S. 821 (1988). Moreover, the "law has shifted from a presumption of release to a presumption of valid conviction." *Id.* (citation omitted). Defendant bears the burden of showing that a "substantial" question exists. *See United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

Defendant's Supplement argues that the Court erred by finding Defendant ineligible for

2

the safe harbor found in United States Sentencing Guideline 2s1.3(b), a provision entitling an eligible defendant to a sentencing level reduction (hereinafter "the Safe Harbor").[2] A defendant may receive the Safe Harbor reduction by proving four elements: (i) subsection 2s1.3(a)(2) must apply to the case, and the enhancements in subsections 2s1.3(b)(1) and (b)(2) must not apply; (ii) the defendant did not act with reckless disregard of the source of the funds; (iii) the funds were the proceeds of lawful activity; and (iv) the funds were to be used for a lawful purpose. *See* U.S.S.G. 2s1.3(b); *United States v. Abdi*, 342 F.3d 313, 316-17 (4th Cir. 2003), *cert. denied*, 540 U.S. 1167 (2004). The Parties agree that the first element is established, but disagree as to the remaining three. Defendant bears the burden of proving these elements. *See id.* at 317 ("the defendant, not the government, has this burden of showing entitlement to any reduction") (emphasis omitted).

At sentencing, the Court determined that Defendant could not establish the remaining three elements. *See* 1/26/07 Tr. 83-84. Specifically, the Court found that Defendant acted in reckless disregard of the source of the funds because Defendant's money transfer business (Himbol Financial Services) had no controls in place to ensure that the funds were derived from lawful activities and would be used for lawful purposes:

> Some of the [transfer requests] were made by mail. The staff had no training in terms of compliance programs or something that would have flagged, if appropriate, that there was suspicious activity . . . [T]here was no control system,

---

[2] The Court focuses on Defendant's Supplement because the initial Motion offers no basis for granting the requested relief. Defendant's first argument (that he poses no risk of flight or danger to the community) is, *ipso facto*, insufficient under 18 U.S.C. § 1343(b) to be released pending appeal. Defendant's second argument concerning ineffective assistance of counsel shall not be addressed by the Court in accordance with the notification received from Defendant's counsel, *see* Mot. for Leave to Suppl. at 1, and Defendant may frame those arguments at a later time in the context of a habeas petition.

3

> so I certainly would view it as a reckless disregard of the source of the funds. The defendant has argued that the funds from the Eritreans in the United States go to poor families in Eritrea. I'm sure that's true to some extent. I don't know how much because, frankly, we don't have any information, so we don't know who received them, [and] for [what] purpose.

1/26/07 Tr. 83-84.

Defendant argues that the Court erred in its analysis because Himbol Financial Services maintained records concerning the money transfers at issue. *See* Def.'s Suppl. at 7. Specifically, Defendant identifies testimony presented at trial that customers had to complete money transfer forms listing the sender, the recipient, and a phone number or bank account number for the latter. *Id.* (citing 6/27/06 Tr. at 304, 307). Defendant designed computer software to track this information. *Id.* (citing 6/27/06 Tr. at 432). Individuals could not send more than $500 without special authorization from an official of the Eritrean Embassy or Defendant. *Id.* (citing 6/27/06 Tr. 308, 330). All of the funds were deposited in the Riggs Bank account of the Embassy of Eritrea, which Defendant presumed had controls in place. *Id.* (citing 6/27/06 Tr. at 365). Finally, the government's exhibits at trial that were based on Himbol Financial Services' records were admitted into evidence by the Court as reliable business records. *Id.* (citing 6/27/06 Tr. at 313, 315).

The Court is unpersuaded by Defendant's arguments because these facts only establish that Defendant maintained records, not that Defendant implemented the controls necessary to verify whether the funds transferred by Himbol were lawfully derived or were to be used for lawful purposes. *See Abdi*, 342 F.3d at 315 (holding defendants ineligible for the Safe Harbor where they kept records of the transactions they made, but failed to verify where the customers derived the funds and did not know how the funds were used once transmitted overseas). As the

Court discussed at the sentencing hearing, some of the funds received by Himbol arrived by mail. Himbol had no process in place to verify the identities of the senders and recipients of the funds, and the staff received no training on how to detect suspicions transactions, even though such controls are required by Department of Treasury regulations governing money transmitting businesses. *See* 31 C.F.R. § 103.125 (describing policies, procedures, internal controls, and training in connection with the Anti-Money Laundering compliance program). The government also presented evidence that Himbol transferred funds to Libya in 2001 and 2002 (in violation of the United States Government's ban on financial transactions with that country at the time, *see* 31 C.F.R. §550.202), which further underscores Himbol's failure to implement the necessary controls. Although the Court acknowledged at sentencing that some of the funds may have been received by poor families in Eritrea, the Court also acknowledged that Himbol's lack of controls prevented there being any evidence on that point one way or the other.[3] *See* 6/27/06 Tr. at 83-84.

On this record, Defendant has not carried his burden of establishing the necessary elements to receive a reduction pursuant to U.S.S.G. 2s1.3(b), and therefore, Defendant has failed to establish the existence of a substantial issue of law that will likely result in a reduced sentence.

---

[3] The Court notes that the Second Circuit's opinion in *United States v. Bove, et al.* suggests that a defendant may not qualify for the U.S.S.G. 2s1.3(b) reduction if he failed to obtain the requisite licenses to operate a money transmitting business. 155 F.3d 44, 48-49 (2d Cir. 1998). *See also Abdi*, 342 F.3d at 319 (Motz, J., concurring in part and in the judgment). The District of Columbia Circuit has not opined on whether it would adopt the Second Circuit's interpretation of U.S.S.G. 2s1.3(b). Nevertheless, the Court notes that the instant Motion does not dispute that Defendant operated without the necessary licenses which, under the Second Circuit's approach, suggests that Defendant is ineligible for the Safe Harbor on that basis alone.

## CONCLUSION

For the reasons set forth above, the Court shall DENY Defendant's [62] Motion for Release Pending Appeal. An appropriate order accompanies this memorandum opinion.

Date: February 20, 2008

                                                     /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge